AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

**SEALED**

| United States of America | ) |
|---|---|
| v. | ) Case No. 8:19MJ79 |
| TIMOTHY R. CESSOR | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __2/4/19__ in the county of _____ in the _____ District of __Nebraska__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 871(a) | threats against the president |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

USSS SA Jerry Heyn
Printed name and title

Sworn to before me and signed in my presence.

Date: 2-15-19

_____
Judge's signature

City and state: Omaha, Nebraska

Susan M. Bazis, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT JERRY HEYN

1. I am a senior special agent with the United States Secret Service ("USSS"). I have worked for USSS since September of 1997.

2. On February 13, 2019, I reviewed an email from the USSS Los Angeles field office and learned the following. On February 13, 2019, Marcie Mavreles, a lead case manager at Cheyenne Regional Medical Center ("CRMC"), called the USSS Los Angeles field office and reported a patient at CRMC, Timothy Ryan Cessor ("Cessor"), had made threats to kill the President of the United States. Mavreles advised Cessor had been on a psychiatric hold since February 4, 2019. Mavreles reported Cessor had attempted to drive from Cheyenne to Washington D.C. with a firearm in his vehicle to "kill Trump and all members of Congress who support him."

3. I reviewed a Cheyenne Police Department report from February 4, 2019, by Officer Reemers, who interviewed Cessor and a member of the CRMC mental health evaluation unit ("the CRMC mental health professional") on February 4, 2019. The CRMC mental health professional had initiated an emergency detention on Cessor as a threat to himself and/or others. The CRMC mental health professional also interviewed Cessor and Cessor's father on February 4, 2019. The CRMC mental health professional provided information from these interviews to Officer Reemers.

4. In his report, Reemers summarized his interview with the CRMC mental health professional. As summarized in Reemers' report: "Timothy Cessor had been driving through Nebraska on the afternoon of Feb. 4th [2019]. About five hours into his trip, Cessor stopped to call his parents. He told them that he had a gun and was en route to Washington, DC to kill the president. Cessor's parents persuaded him to return to Cheyenne. Upon his return, his father . . . took and secured the gun and drove Timothy to CRMC. Timothy was admitted at about 1930 hours" (It is not clear from Officer Reemers' report whether this information originally came from Cessor, Cessor's

father, or both).

5. In his report, Officer Reemers also summarized his interview with Cessor. As summarized in Reemers' report: "I learned that Cessor had been armed with a Smith & Wesson .40 Caliber pistol (model unknown) and two 13-rd magazines. The gun belonged to his father and he had taken it without his father's knowledge or permission. Cessor did not really have a coherent plan to kill the president. He had not considered the details or his chances of success. He had an urge to take immediate action. Cessor had not written any notes, letters or e-mails to explain or justify his actions. Cessor had no 'manifesto.' Cessor verbalized a list of grievances against President Trump."

6. On February 14, 2019, I reviewed emergency room notes by a CRMC emergency room doctor, which summarized information provided by "the patient and his family." According to the notes, Cessor presented with "anger homicidal ideation towards President Trump. Pt states, 'I went to kill Trump.' . . . His dad states the pt was driving on I-80 with the intent to cause harm, when the pt stopped in Nebraska and called him. He was able to convince the pt to come back for treatment. Pt states he does not want to harm anyone else 'unless they are helping him (Trump) or come to his aid.'"

7. On February 14, 2019, I interviewed Cessor's father by phone. Cessor's father provided the following information. Cessor called his father at about 2:00 pm on the afternoon of February 4, 2019. Cessor told his father that Cessor had left home armed with a gun and was going to take care of Trump. At the time of the conversation, Cessor told his father that Cessor was in Nebraska. Cessor said he could not do it and had called his father for help. Cessor's father persuaded Cessor to meet back at their house in Cheyenne, Wyoming. At the time Cessor's father received this call from Cessor, Cessor's father was working in Nebraska for the Air Force. Shortly after 5:00 pm, Cessor met his father and mother at their house in Wyoming and Cessor agreed to be driven to CRMC.

8. I have not included all facts and circumstances known to me about this investigation, only those deemed necessary to constitute probable cause for the requested complaint.

9. I have probable cause to believe that Cessor committed a violation of federal law, to wit: Threats Against President and Successors to the Presidency in violation of 18 U.S.C. § 871(a) and that this affidavit establishes such probable cause.

Respectfully submitted,

*[signature]*
Jerry Heyn Jr.
Special Agent
United States Secret Service

Subscribed and sworn to before me on
February 15, 2019

*[signature]*
SUSAN M. BAZIS
UNITED STATES MAGISTRATE JUDGE